United States v. Frias from Mr. Arsici. Good morning, Your Honors. Good morning, Counsel. John Arsici, Assistant Federal Public Defender, appearing on behalf of the appellant, Julia Frias. Your Honors, I'd like to address both of Ms. Frias's claims today, starting with her constitutional speedy trial claim and then moving on to the Court's response to the jury's question. Now, on the constitutional speedy trial claim, the only real dispute here is Barker's fourth prong, that is, prejudice. But that prong weighs in Ms. Frias's favor, just as the district court below found that all three other prongs did. And that's, we've identified a number of different forms of prejudice in our briefing, and I don't want to rehash all of those, but I do want to briefly address two that I think are particularly poignant. The first is that the delay deprived Ms. Frias of the opportunity to seek a reduction to her state sentence under Colorado Rule of 35, of Colorado Rule of Criminal Procedure 35B. Mr. Arsici, I know you want to leap to prejudice and understand completely why, but on the first factor, as I read your opening brief and your reply brief, you are only relying, you are only challenging the nine-month delay, correct? There is a distinction between the first factor and the fourth factor. On the first factor, the delay is the full two-year delay. That's what everyone agreed below was presumptively prejudicial for purposes of the first factor. Okay, well, let me ask you about the heading of your opening brief to us. And I know in district court, you did challenge both the two-year delay and the nine-month delay. But your heading to us is the over nine-month delay between Ms. Frias' state sentencing and federal arrest on a then two-year-old indictment violated her constitutional right to a speedy trial. And you repeated that heading, if I'm not mistaken, in your reply brief. And so I read that to say, on appeal, you are only relying on the nine-month delay. And I apologize for the confusion, Your Honor. The reason the nine-month delay is important is because that's the emphasis on our fourth-prong prejudice inquiry. We haven't challenged the prior period with respect to the fourth prong. So what I meant by that simply was that the nine-month period encapsulates all of the Barker factors, and that the ultimate constitutional violation occurred during that time. Well, I want to ask you, and opposing counsel, I think, follows the same track that you are, but I'm not yet convinced that we should consider the two-year delay on the first factor. If you are telling us that the nine-month delay constituted a violation of your right to a speedy trial, and let's say there is this other two-year delay between the federal indictment and the completion of her sentencing in state court, and you are not even challenging that delay to us, why should we say that there is this delay of two years, and it's presumptively prejudicial under the first factor, and so we get into the other three factors ordinarily, but the anomaly about this case is you're saying, I'm not challenging. There's nothing wrong with that two-year delay to use circuit court. I don't think that goes so far as to say there's nothing wrong with it, but we don't need to prevail on that to prevail over a constitutional trial violation, I think. But I think that if you look at the court's first factor — Well, we don't even get to the other three factors if you haven't satisfied the first one. And the first one is a triggering mechanism, right? And I think this Court's cases make clear that we're looking at the period of the delay, right? And that period, indisputably here, was two years. Then we look at whether the delay was — what the reason for the delay was, the second prong. And here the district court found that some of that delay was reasonable, some of it wasn't reasonable. But you've already gotten to the second prong at that point because that two-year delay triggers it. So I think that the Court's cases focus that inquiry, whether rightly or wrongly, but focus it on the total period of the delay, as you hear. The way I read it is that you're basically saying that, yes, you meet Factor I, but it's Factor II that really makes Factor I important. What portion of the delay is reasonable is what it's all about. Factor II narrows Factor I, and I think it's a continual narrowing as we go through the Barker factors. And so I think the government's obviously conceded Factor I. The Court's not bound by that concession, but I think it's well-founded under this Court's precedent. Now, with respect to prejudice, it is that nine-month period that the district court below found was unreasonable and in which we focused our prejudice inquiry because we think prejudice is most obvious during that time. In particular, as I mentioned, Ms. Freese was denied this opportunity to seek a reduced State sentence, which she could have done up until July of 2016. But because the government waited until December of that year to indict her, I mean, to arrest her on the two-year-old indictment, it completely foreclosed the possibility that she would ever have that opportunity. That is meaningful prejudice. Now, the government is right that it was a discretionary decision for the district court and the State court, but so is the decision of whether or not to run a sentence concurrently. And the Supreme Court has said, and this Court has said, too, in the Cone case, which is unpublished but cites Supreme Court precedents for this proposition, that the loss of that opportunity is meaningful. It's prejudicial. In Cone v. Bell, am I correct that the Court was talking about the prejudice that's implicated from the Federal courts, the loss of the ability to have the Federal court run the sentence concurrently, but this Federal judge knew darn well he could run the sentence concurrently and explicitly ran it consecutively? And in most cases, that's where – most cases are going to proceed in that way, right? We can't anticipate what a State court might do at some point. No, but you can – Which is what you're asking us to do. Well, no, I'm not. I think – well, let me answer that in two ways. First is that I think actually here we have a pretty good sense of what the State court would do based on the fact that the parties in the State were in agreement that Ms. Freas – that they would ask the State court for a reduced sentence, and the State court in its judgment ran her sentences concurrent to any sentences she was currently serving. So I think there is a pretty good chance actually she would have done that. But second, we don't have to anticipate it because we have proven that she lost the opportunity, and that is meaningful. The – with respect to Your Honor's question, with respect to the timing, or the – most sentences, it's going to be prospective looking, right? Because that's typically where the concurrent consecutive decision is going to lie. Colorado has this unique rule that allows the State courts to revisit its sentencing decision within 18 weeks. That's a meaningful one, and it was bargained for in Ms. Freas' State case, and again, I think it's a reasonable probability that she at least lost that opportunity. Moreover, on this point, she also lost the opportunity for earlier parole, which is undisputed that her first parole date was in May 2017, and she was in Federal custody at that point, so she lost that. The Federal judge gave her three months' credit. And that was very nice of the court, but the Supreme Court recognized in Moore v. Arizona 40 years ago that a sentencing reduction is not an acceptable remedy for a constitutional speedy trial violation. The only possible remedy is dismissal. So if the court were that concerned about that missed date, it should have factored into the prejudice analysis. Well, okay. I don't know that my brain works as fast as you talk, so let me ask you about that. So we look at the prejudice. So what is the existing prejudice when the Federal judge said, okay, I realize there was prejudice. She missed her, you know, she was waiting the Federal sentencing, and so I'm going to give her three months' credit because she missed that May 17 hearing date. And so what remaining prejudice is there on the missed parole hearing date? Well, she could have started her Federal sentence earlier if she had been paroled from the State to a Federal detainer in May. She could have what? She could have started her Federal sentence earlier because when the Federal sentence starts, when you're paroled from your State sentence, so that three months is an estimate. In actuality, she ended up, I think, not being paroled until later. It's not in the record, so I don't want to delve deeply into that. But I think that that estimation doesn't absolve the prejudice that would be attended from the possibility of starting a Federal sentence earlier and ultimately doing more time, which is ultimately what we're concerned about. The other way that I think the district court erred. No, she had credit for all of the time she was in Federal custody. Towards her State sentence? No, towards her Federal sentence. When she was sentenced, she didn't have to start fresh from there. If she had been in Federal custody. No. Actually, she appeared on a writ in Federal custody. She was in State primary jurisdiction and appeared on a writ, so that time wouldn't be counted. No, that's true. Yeah. And so that's part of why it's prejudicial and important is that time all went to the State. I guess I missed your point then because you said she could have started her Federal sentence early. She would have started. Her Federal sentence would begin to run when she enters primary custody of the Bureau of Prisons, right? And so if she paroled earlier, she would have paroled to the Federal detainer. Paroled from the State. Paroled from the State to the Federal detainer. She would have started her Federal sentence earlier than she did. That's why the parole, missed parole date ultimately matters. The other way that the district court, I think, really erred is it completely disregarded this Court's holding in Seltzer, which said that the loss of a delayed appointment of Federal counsel and the late start of a statutory speedy trial act clock is prejudicial. Now, that prejudice is going to sort of, is going to vary right from case to case. But Seltzer's published decision of this Court said that that is prejudicial under Barker's fourth prong, and the district court refused to give it any credit. And so I think I don't want to dwell beyond that on the other factors. We've identified a number of other prejudicial showings in our briefing. I think those all incrementally add to the weight. And because all four Barker factors are decidedly in Ms. Frey's favor, this Court should reverse the district court on that issue. Now, with respect to the jury question. Well, let's, how about some additional prejudice you were going to talk about? I'm sorry? Where is the additional prejudice in what you've just said? The district court also erred because it didn't, it categorically rejected the possibility of showing anxiety and concern or oppressive pretrial custody because she was in federal custody. Okay, so those are the three areas, the only three areas involved. Those are the main areas, yeah. I mean, the others, we've also identified, you know, that she showed generalized anxiety and prejudice, and we've argued that that's enough. But, you know, I can see that that's, that wouldn't be enough to win the case, right? That is, it's important, but it's an incremental additional showing of prejudice. Did she lose any evidence? The main impairment of defense in this case is simply the documented memory lapses that the only defense witness had in the case. Now, what were the documented, I thought the defense witness was pretty, she remembered pretty much everything. She didn't remember much, actually, but her testimony. She didn't remember jumping in the back seat. She remembered gutting out, climbing over the fence. She remembered hiding out until somebody came to pick her up. And so I think that the. So what didn't she remember? She couldn't testify to things like whether she had a purse that day, whether Ms. Freas had a purse, whether she remembered seeing a gun, things like that. Now, her testimony was purposefully curtailed. Was anybody asking her those questions? No, and that was. Then how can we make a ruling on that? Because defense counsel proffered that not asking those questions was a strategic decision that they were forced into. Well, he could have made a proffer with the witness out of the presence of the jury without any cross-examination, as opposed to just saying what he thought might happen. Yeah, and I think it's ultimately for us, it's the strategic choice of being forced to not be able to ask those questions. They did introduce an affidavit from an investigator to put that before the court. But ultimately, the impairment of defense isn't going to be ultimately prejudicial enough to prevail in this case. We need the others as well. And I think cumulatively there's enough prejudice here. With respect to the jury's question. Sorry, I'm going to. I still have another question before you hop to the jury instruction. If we conclude that there's only, that there's either no prejudice or slight prejudice, do you lose the appeal? No. I think we, if you conclude there's some prejudice, all four factors weigh in. If we conclude that there's no prejudice, do you lose the appeal? Not necessarily. Prejudice is not required. No particular factor is required. And I think this Court can still determine that a violation occurred even with the other three factors. Now, just briefly with respect to the jury's question. In many cases, referring back to previously given jury instructions may be adequate. But it wasn't in this case because when the jury asked its question, expressed its confusion, the Court's role was to dispel that confusion with concrete accuracy. Referring back to the very instructions that the jury has asked about can't dispel that. The jury was clearly confused, and its confusion was about the important legal standard in the case, possession. There was a concretely accurate answer, and that was no. It was an abuse of discretion not to give it, and I'm going to reserve my last 30 seconds for rebuttal. Thank you. We'll hear from Mr. Murphy. Counsel, members of the Court. Jim Murphy, Assistant U.S. Attorney here in Denver representing the United States. Although the matters that defense counsel has argued bear upon this issue, I would focus the Court somewhat differently than he does. I think there are two critical things upon which this case depends. First is the reason for the delay, which was two years at least. I can see that between the return of the indictment and her initial appearance. The second is whether or not Ms. Rios' defense was impaired. I think the case comes down to that. They are not the exclusive factors, but I think those are the critical things that the Sixth Amendment is trying to reconcile, and it was also the focus of Judge Moore's ruling below. Now, the reason here, and because the defense has made so much of Seltzer in the briefing, I will immediately state that this case is very different in numerous regards to Seltzer, particularly in the compelling need to delay. The federal prosecutor was faced with a situation where a defendant who could be charged as being a felon in possession was facing a first-degree murder prosecution in Jefferson County. It carried, if she were convicted of that charge, a mandatory life sentence. She was not the only defendant. There were three defendants in the case. And in the judgment of the federal prosecutor, that case was more important, and I respectfully suggest that she made the right call. In addition to that case, there were three other warrants for Ms. Rios at the time, from El Paso County and Colorado Springs, another one from Jefferson County, and one from Denver County. So we've got the federal case, we've got a first-degree murder prosecution, and we've got these three other warrants for her. Your Honors, prosecutors have to make decisions about what's important. We're dealing with all these jurisdictions, and to some extent, I don't deny the factors of the case law or the importance of the technical details, but trying to reconcile all these interests can be challenging. And shuttling a defendant back and forth takes up a lot of resources for the marshals, for the bailiffs in the state. It can become, quite frankly, a nightmare trying to schedule things, because they don't just go to court once, they go to court for five minutes, then they go back. Is anybody disputing any of that? Isn't this all about from March 2016 to December 2016? Isn't that the period of time that we're talking about, whether the delay was justified? Are you referring to the eight- or nine-month period, Judge? Yes. Yes, that's the way it was argued both in their opening brief and in their reply brief. They challenged the judge's reasonable reasoning that that was not reasonable. You don't challenge that now, or you do? I'm confused. Well, we maintain that the entire period was reasonable, but the only issue before this court seems to be whether that eight- or nine-month period. Right. The district court kind of suggested that maybe it was because she was participating in a cold case investigation that they didn't want to drop the indictment on her because she might not be as inclined to participate. There was some inclination of the judge to find it wasn't reasonable because of that? Does that sound right? There were two periods, or there were two, actually, acts of cooperation, and it may be confusing on the record. Okay. Part of it is sealed, and part of it is not. There was no point in sealing the fact that Ms. Freeth cooperated in this murder prosecution and testified in open court at trial against one of her co-defendants. And I think it was during this period that Judge Moore found that this was a reasonable period of delay. Right. But once she was sentenced, Judge Moore said, I don't understand why the federal government didn't take her into custody then rather than waiting for eight months. And the reason, which technically is sealed, although some of this is still in the record that is not sealed, so it's a bit of a mixture below, is because there was what you just said, Judge Moritz, there was another form of cooperation that she was engaging in. Right, and the judge alluded to that. Yes, he did. And seemed to think that wasn't, didn't seem impressed with that as a reason. He did. I'm saying to you, I don't see where you've offered any reason on the record for that period of delay. And so that seems to me to rather strongly weigh against you. Well, as to the reason for delay, we have the cooperation on her own murder prosecution, the testimony against a co-defendant. And then she continued the cooperation, but with regard to other cases. And the reasoning of the prosecutor was it all melds together, and it seemed unreasonable to pull her out of Jefferson County over to the federal government when she was still working with authorities over there. Judge Moore said, well, I understand your feeling, but it's not impossible. They can come to federal prison. Well, he said more than that. Did he? I think he did. I think he said, I've been there. And he has been. Yeah, he has been there. And he's saying, this is what I read into his words, and I'm not purporting to quote him, but I think he was saying, yeah, the government's enlisting her aid and cooperation again, and she might not be as willing to cooperate if she had known that she had been indicted on federal charges two years and nine months earlier. Well, I think it was just two years. I don't know the matter. Okay, two years. So not only is it sealed at the government's request, but the government also refuses to tell her that she has been indicted. And so I think that's what Judge Moore was saying, and I think Judge Moore was being awfully generous to the government, calling it negligent, because I think he was clearly saying that. Well, he didn't say we were negligent, did he? He said it wasn't malicious, but it was not. Okay, all right. Well, but the point is, he found it unacceptable. And I don't see anything that you're offering to us to say that it was acceptable. Well, it seemed logical, I think, to the assistant U.S. attorney, because she'd been cooperating for 16 months. We had another eight-month period, and she was continuing to cooperate on different matters. So I think it just all made sense. And I think in an intuitive sense that it does. Well, it doesn't make sense to me when she even had her attorney trying to, you know, find out what was going on with the Federal, on the Federal side. She was making an effort here. It's not like she was delaying, and she's not getting anything. And it's because they're using her, because they want her to continue to cooperate, is what the judge seemed to be saying. And he didn't think that was a reasonable basis for the delay. As to what Ms. Prius wanted, without speculating, I would slightly disagree with your take on that, Judge Moritz. And I would specifically contrast it with the Seltzer case, where Mr. Seltzer twice asked the assistant U.S. attorney to bring him over, and twice the assistant U.S. attorney, who was out on the West Slope, that was a Colorado case, too, said no. Here, the briefing, particularly the public spending briefing, kind of plays both sides of that. On the one hand, they say the indictment was sealed. You can't falter for not asking to be brought over. All right. I understood that. Judge Moore understood it. But on the other hand, they argued correctly that the federal prosecutor was in contact with Ms. Prius, a state attorney. They all knew about the federal case, and they were inquiring if any kind of resolution could be made. And I still don't believe there was any specific request that, well, you do something about this. Because she didn't know that she had been indicted. Well, she knew the case was there. She could have said, darn it, when are you guys going to indict me? And in another case, you'd be absolutely right. But, Judge, what if I were indicted for first-degree murder facing a mandatory life sentence? Would I really be concerned and say, oh, federal government, would you please bring me over so you can prosecute me and imprison me there? No. You wouldn't. No. I would want to know that I'd been indicted so I could hire a lawyer to defend me and to interview Ms. Tafoya while her recollection is fresh. That's question one. Not really a question, but your take on that. And the second question is, why was it sealed? I don't get that. I do not get why.  I don't think she's going to flee when she's in state prison. Why was it sealed? And that was at the unilateral request of the government. Yeah. I think you've accurately stated it, Judge. That's the normal reason we would seal an indictment, because we don't want people to flee while we're trying to arrest them. But she was in prison. Yeah. And it was without bond. And that's undisputed. She wasn't getting out because of the first-degree murder charge. Why not unseal the indictment? Judge, I don't know. I'm sorry. I don't know. I asked myself the same question. I forgot to ask the right person. That's my fault. Okay. There may well be a reason, but I'm not going to try and obfuscate matters. Okay. I don't know. I think it's just that it's somewhat routine so people don't flee. But then it turned out she got, you know, she was in a state prison without bail. And I think it just transpired that way. It's more or less standard procedure. And here you look back and you say, well, maybe that wasn't really necessary. That would be the best I can do on that, Judge. I appreciate your candor. But I understand the concern that, yes, she could have been brought over during this time. The state investigators she was cooperating with could have come to the federal government. They could have met with her there. It would have been more cumbersome. Yes, it could have been done. But you know where I'm going from here. There really is no significant evidence that her defense was impaired. The stuff about Ms. Tafoya is I admire the efforts of the federal public defenders, but it wasn't until the third attempt and third motion that they even came up with that much. And that wasn't Ms. Tafoya. That was their own investigator after trial going back and saying, well, maybe she could have remembered more. But as Judge Kelly correctly pointed out, they didn't ask her. And you can't really claim someone couldn't remember something when you didn't ask them the questions anyway. And the questions that would have been asked, and if speculating they'd been answered in a certain way, would have incriminated Ms. Tafoya because she would have had to say, oh, those drugs? Those are my drugs. That gun? Well, that was my gun. Now, I leave to your imaginations the likelihood of that. And I think on this record, particularly the record of Ms. Tafoya's testimony, that does not really suggest that she's not remembering because she remembered quite a bit when she was asked. And this, after the fact affidavit, did not, in the estimation of the district judge, suffice to show any significant impairment of her memory. And, again, I don't think they can credibly argue that she couldn't remember when there is no record on that. Can you move on to address the delay that he believes is the most substantial, which is the fact that she wasn't able to hear? I apologize. My hearing is not first grade. Yes, I'm sorry, and I'm not speaking up. It's my fault. I apologize, too. Can you get to the point that he made most strongly, which is that she wasn't able to seek to modify her sentence within the 18-month period provided under Colorado law? Yes. There was no lost opportunity here, not an opportunity protected by the Sixth Amendment. To the extent, there is some question as to whether or not loss of a sentencing opportunity is genuinely prejudiced under the Sixth Amendment. Impairment of defense is what most of the cases say. The question of sentencing does come up. The way I see the case law, the defense counsel cited, it goes more to the oppressive pretrial incarceration. But that's still relevant somehow to prejudice, conceivably, because that doesn't impair the defense. Sixth Amendment protects getting you into court so you can make your appearance and answer to a charge. Sentencing is at the other end, and it's not quite the same interest. But the interest here was still protected, whatever the interest was, because the question of whether these sentences should be consecutive or concurrent was presented to a judicial officer. It just wasn't the state judicial officer. Judge Moore had to make that decision. She had been sentenced. She got a great plea deal because she testified on behalf of the state. She got a four-year sentence for being an accessory to murder. She ended up in federal court as a felon in possession, and Judge Moore said, these are completely different matters. I will not run them concurrent. She had the opportunity. It just didn't come out the way she wanted. And there's suggestion that somehow they were going to go back. If it had just been a little earlier under state rules, then they'd go back, pardon me, and they'd plead to the state judge that he should somehow tinker with the state sentence to undo what Judge Moore did. And they may argue that to Judge Moore, which I thought took nerve. And Judge Moore said, you're kidding me. You think there's a Sixth Amendment right to go back to state court and undo what I just did? And I think Judge Moore was right about that. The Sixth Amendment does not protect that interest. That's not what it's all about. They had their opportunity for a sentence. It was fair. And their suggestion that this was going to happen in the state was largely speculative. They called her state attorney to testify, and Judge Moore was openly incredulous, said, I don't think you understand how the court system works. And he was the one that heard that testimony. He also heard Ms. Tafoya's testimony at trial, by the way. And although the ultimate question here, we all know, is a legal one. It's the Sixth Amendment. It rests upon critical factual findings that I think are owed considerable deference by this court. So have I addressed your question, Judge Moritz, I hope? Your time is up. Thank you very much. Thank you, Your Honors. We'll hear from the appellant. Thank you, Your Honors. Two quick points. The Federal proceedings in this case lasted about nine months for Ms. Frias's arraignment. If she had been arrested in March 2016 instead of December 2016, she would have finished her Federal case in December of 2016. Maybe she would have, and maybe she wouldn't have. I mean, it's just absolute speculation. It's speculative, but the point is that there was no excuse for the government not to arrest her sooner, and she suffered prejudice during that time, and that's all we ultimately need to show. I see I'm out of time, so I'd ask for a reversal. Thank you. Thank you very much. Well presented by both sides in your briefing and your argument today. Thank you. And then the last case.